**John R. CONNER, Plaintiff,**

v.

**Glen R. JEFFES, Superintendent, S.C.I., Dallas, et al., Defendants.**

**Civ. No. 74–1206.**

United States District Court,
M. D. Pennsylvania.

May 15, 1975.

John R. Conner, pro se.

Robert P. Kane, Atty. Gen., James C. Barnes, Jr., Deputy Atty. Gen., Pa. Dept. of Justice, Harrisburg, Pa., for defendants.

SHERIDAN, Chief Judge.

This civil rights action was tried before the court and a jury on March 3, 1975. Pursuant to Rule 49(b) of the Federal Rules of Civil Procedure, the court submitted to the jury a general verdict form together with written interrogatories upon issues of fact the decision of which were necessary to a verdict. Since no party had any objections to the court's charge to the jury, the sole issue in this case is how judgment should be entered given the fact that the answers to the interrogatories conflict in part with the general verdict.

John R. Conner, an inmate incarcerated at the State Correctional Institution at Dallas, Pennsylvania, filed this civil rights action pursuant to 42 U.S. C.A. §§ 1983–1985, 1986, 1988 seeking injunctive relief against defendants, Stewart Werner, Commissioner of the Bureau of Corrections of Pennsylvania, Glen R. Jeffes, Superintendent of the State Correctional Institution at Dallas, Ernest Patton, Superintendent of the State Correctional Institution at Camp Hill, and Lowell Hewitt, Superintendent of the State Correctional Institution at Huntingdon. Plaintiff also sought compensatory damages of ten thousand dollars from each of the defendants except Werner, against whom no damages were sought. The complaint asked for trial by jury on all triable issues. Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the court advanced and consolidated the trial of the action on the merits with the hearing on the application for a preliminary injunction. The court conducted a bifurcated trial on the issue of liability.

Plaintiff testified: (1) that he had been continuously transferred from one prison to another without reason in order to punish and harass him and that these transfers were painful at times because of his back injury and deprived him of any meaningful opportunity for rehabilitation; (2) that upon his return to Huntingdon from Camp Hill after a medical operation on his back, he had not been given his old job in the legal clinic and had been held temporarily with the new commitments instead of being housed immediately in his old cell block in the general popula-

tion, these acts being the result of the improper and arbitrary classification of his original transfer to Camp Hill for the back operation as a permanent transfer instead of a temporary transfer by the prison authorities at Huntingdon; (3) that the taking of his back brace and his attache case as contraband by defendant Jeffes at Dallas violated his constitutional rights; and (4) that he had been deprived of adequate and reasonable medical care in violation of his constitutional rights.

■■ When issues of fact are common to both the legal and the equitable claims and a jury trial has been demanded on the issues material to the legal claim, a jury must be permitted to determine these issues prior to decision of the equitable claim. Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; Dairy Queen, Inc. v. Wood, 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44; Ross v. Bernhard, 1970, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed. 2d 729; United States v. Williams, 5 Cir. 1971, 441 F.2d 637; 9 Wright and Miller, Federal Practice and Procedure § 2338. The fundamental principle of the *Beacon Theatres* case, supra, is the desire to protect jury determination of common issues. Thus the court in the case *sub judice* could not rule on the request for a permanent injunction until after a jury trial had been held on the request for monetary damages. After the legal claim has been determined, the court, in light of the jury's findings on the common issues, then decides whether to grant any equitable relief.

To enable the court to conform with the aforementioned principles, the case pursuant to Rule 49(b) of the Federal Rules of Civil Procedure was submitted to the jury with a request for a general verdict with respect to liability for damages accompanied by written interrogatories on the issues of fact involved in the case, so that the court would have the jury's factual findings to utilize in adjudicating the request for injunctive relief. The jury returned a general verdict in favor of defendants Patton and Hewitt and a general verdict in favor of plaintiff against defendant Jeffes. Since no monetary damages, but only injunctive relief, had been sought against defendant Werner, no general verdict was requested nor returned with respect to him.

The answers to the interrogatories, while consistent with each other, clearly are inconsistent with the general verdict in favor of plaintiff against defendant Jeffes. Plaintiff waived damages against defendant Jeffes but still insisted judgment be entered against him. In addition, on the basis of favorable answers to interrogatories 1(a), 1(b), 1 (c), and 6(a), plaintiff requested appropriate injunctive relief. Defendants maintained that the answers to the interrogatories did not entitle plaintiff to any injunctive relief. The court agreed to allow both parties to file motions and briefs addressed to the issue as to how judgment should be entered in light of the general verdict and the answers to the interrogatories before the court entered judgment.

Subsequently, plaintiff filed a motion under Rules 49(b) and 50 of the Federal Rules of Civil Procedure requesting that judgment be entered against Jeffes and Hewitt or, in the alternative, a new trial be granted. Defendants filed a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a motion for judgment consistent with the answers to the interrogatories or in the alternative a motion for a new trial pursuant to Rule 49(b) of the Federal Rules of Civil Procedure.

■ After consideration of the aforementioned motions and the parties respective contentions in support thereof, the court entered the following judgment on the verdict:

"It is ORDERED and ADJUDGED that the injunctive relief requested by the plaintiff is denied and that judg-

ment is entered in favor of the defendants."

The court entered judgment in this manner pursuant to Rule 49(b), which states in pertinent part: "When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict . . .." The jury's more specific findings of fact are allowed to control their general conclusion embodied in the general verdict. The general verdict may be confused because the jury misunderstood the law, whereas their specific findings of fact—and the jury after all is only a fact-finding body—are a better guaranty of their intentions. 5A Moore, Federal Practice ¶ 49.04.

The jury's answers to the interrogatories which pertain to defendant Jeffes established the following: that none of the transfers of the plaintiff from one prison to another constituted harassment or punishment of the plaintiff by any of the defendants (Interrogatory 2) and that the transfers did not subject plaintiff to cruel and unusual punishment (Interrogatory 3); that the taking of plaintiff's back brace as contraband by defendant Jeffes did not subject plaintiff to cruel and unusual punishment nor did it deprive him of his personal property without due process of law (Interrogatories 4(a), 4(b)); that the taking of plaintiff's attache case as contraband by defendant Jeffes did not deprive plaintiff of his personal property without due process of law (Interrogatory 5); that while plaintiff was deprived of adequate and reasonable medical care (Interrogatory 6(a)), this deprivation did not subject plaintiff to cruel and unusual punishment (Interrogatory 6(b)). On the basis of the answers to these interrogatories, there is no possible legal basis for a general verdict against defendant Jeffes and thus the court accordingly entered judgment in his favor, despite the general verdict against him,

pursuant to Rule 49(b) of the Federal Rules of Civil Procedure. A mere finding of inadequate medical treatment does not suffice to support imposition of liability under the Civil Rights Act. Kontos v. Prasse, 3 Cir. 1971, 444 F.2d 166; Isenberg v. Prasse, 3 Cir. 1970, 433 F.2d 449; Commonwealth of Pennsylvania ex rel. Gatewood v. Hendrick, 3 Cir. 1966, 368 F.2d 179; Church v. Hegstrom, 2 Cir. 1969, 416 F.2d 449; cf. Gittlemacker v. Prasse, 3 Cir. 1970, 428 F.2d 1, 3–6. Moreover, the jury found that the inadequate medical treatment did not subject plaintiff to cruel and unusual punishment, and hence under Section 1983 there clearly is no basis for imposition of liability or issuance of injunctive relief against defendant Jeffes. See Howell v. Cataldi, 3 Cir. 1972, 464 F.2d 272, 277–278; Jackson v. Bishop, 8 Cir. 1968, 404 F.2d 571, 577–580.

Plaintiff contends that he is entitled to judgment against defendant Hewitt on the basis of the answers to Interrogatories 1(a), 1(b) and 1(c). The jury returned a general verdict in favor of defendant Hewitt. However, the jury in its answers to the interrogatories found that plaintiff's transfer from Huntingdon to Camp Hill was not a permanent transfer, that the refusal of the prison authorities at Huntingdon to give plaintiff his job back in the legal clinic and instead their assigning plaintiff a different job constituted a demotion or lowering of his prison status, and that plaintiff's placement upon his return to Huntingdon after his back operation with other new commitments and temporary holdings instead of in the general population, where he had been housed before his temporary transfer out of Huntingdon, constituted a lowering of his prison status.

These findings are consistent with the general verdict for at least two reasons. First, the principle of respondeat superior is inapplicable with respect to claims for monetary damages under the Civil Rights Act, Jennings v.

Davis, 8 Cir. 1973, 476 F.2d 1271, 1274; Johnson v. Glick, 2 Cir. 1973, 481 F.2d 1028; Adams v. Pate, 7 Cir. 1971, 445 F.2d 105; Dunham v. Crosby, 1 Cir. 1970, 435 F.2d 1177; Ammlung v. City of Chester, E.D.Pa.1973, 355 F.Supp. 1300, aff'd on other grounds, 3 Cir. 1974, 494 F.2d 811; Campbell v. Anderson, D.Del.1971, 335 F.Supp. 483; Hamilton v. Dalton, E.D.Pa.1971, 334 F.Supp. 794; *cf.* Fisher v. Volz, 3 Cir. 1974, 496 F.2d 333, 349 (doctrine of respondeat superior is inapplicable with respect to claims for punitive damages). The jury could have concluded, in accordance with the testimony and the court's charge, that defendant Hewitt had no knowledge of and no direct personal responsibility for the aforementioned actions at Huntingdon and hence was not liable for monetary damages. *See* Curtis v. Everette, 3 Cir. 1973, 489 F.2d 516. Second, the jury could have concluded that the actions undertaken were a misjudgment as to the nature of plaintiff's transfer from Huntingdon to Camp Hill amounting to an act of negligence at most and hence did not rise to a deprivation of plaintiff's constitutional rights. *Cf.* Gittlemacker v. Prasse, supra; Howell v. Cataldi, supra; United States ex rel. Tyrrell v. Speaker, 3 Cir. 1973, 471 F.2d 1197; Gray v. Creamer, 3 Cir. 1972, 465 F.2d 179.

The fact prisoners retain constitutional rights in no way implies that these rights are not subject to restrictions imposed by the nature of the regime of imprisonment to which they have been lawfully committed. Wolff v. McDonnell, 1974, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935; *see* Pell v. Procunier, 1974, 417 U.S. 817, 822–823, 94 S.Ct. 2800, 41 L.Ed.2d 495. A prisoner is not entitled to choose his place of incarceration nor his prison job; he is not entitled to a choice of prison accommodations. United States ex rel. Tyrrell v. Speaker, 3 Cir. 1973, 471 F.2d at 1201. As stated by the Court of Appeals for the Third Circuit in Bryan v. Werner, 3 Cir.

No. 74–1406 (filed May 7, 1975), "[w]e do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause." Therefore, the court held in that case that a prisoner was not constitutionally entitled to a hearing before being reassigned from the Resident Law Clinic to the Inside Lawn Duty. *Cf.* Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Thus the court holds that the answers to interrogatories 1(a), 1 (b), and 1(c) do not support the granting of any injunctive relief against defendant Hewitt. Indeed, the request for any such injunctive relief is moot since plaintiff is not incarcerated at Huntingdon. *See* Poe v. Werner, M.D.Pa.1974, 386 F. Supp. 1014, 1015.

This memorandum is in support of the court's entry of judgment in favor of the defendants on April 17, 1975, on the general verdict accompanied by answers to interrogatories pursuant to Rules 49(b) and 58 of the Federal Rules of Civil Procedure.